IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| THE UNITED STATES OF AMERICA *ex rel.* ALVIN GALUTEN, | ) ) ) | |
| Relator/Plaintiff, | ) ) | |
| v. | ) ) | Civil No. 2:11-cv-04140-FJG |
| UNIVERSITY OF MISSOURI-COLUMBIA, *et al.*, | ) ) ) ) | |
| Defendants. | ) | |

## ORDER

Pending before the Court are: (1) Relator's Motion to Retain Partial Jurisdiction of Settled Claims (Doc. No. 44); (2) The United States' Notice of Dismissal Regarding the University[1] (Doc. No. 48); (3) The United States' Amended Motion to Approve Proposed Settlements with Rall and Richards as Fair, Adequate, and Reasonable (Doc. No. 49); (4) Relator/Plaintiff's Motion for a Relator's Share of Settlement Proceeds (Doc. No. 53);and (5) Relator/Plaintiff's Motion for a Fairness Hearing Pursuant to 31 U.S.C. § 3730(C)(2)(B) (Doc. No. 54). Doc. Nos. 44, 48, 53, and 54 relate to claims against the University and will be analyzed together.

**I.  Background**

The relator, Alvin Galuten, alleged in his complaint (Doc. No. 1, filed on May 24, 2011) that the University and various persons within its medical school and department

---

[1] Relator sued the Curators of the University of Missouri. In addition to the Curators, he sued the University of Missouri-Columbia and its School of Medicine, Department of Radiology, and Missouri Radiology Imaging Center as part of its University of Missouri Health System. However, those defendants are not separate legal entities but are part of the Curators of the University of Missouri. These defendants are collectively referred to as the "University."

of radiology were falsely claiming reimbursement for radiological services provided by attending or teaching physicians when those services were actually provided by residents, and were otherwise up-coding bills so that Medicare/Medicaid/Tricare overpaid the University and its physicians. Relator was a Fellow and part-time faculty member from August 1, 2010 until October 2010, and indicated that he observed this behavior from faculty. Named as defendants are: The University of Missouri - Columbia; University of Missouri-Columbia School of Medicine; University of Missouri-Columbia Department of Radiology; Missouri Radiology Imaging Center; Dr. Kenneth Rall; Dr. Michael Richards; Dr. Megha Garg; Hans Juengermann; Dr. Humera Ahsan; Dr. Amir Fallahian; and Dr. Gaurav Kumar.

After significant time spent in investigation, the government moved to intervene in part for purposes of settlement, and declined to intervene in part. See Doc. No. 28, filed on October 5, 2015. In particular, the government intervened as to the part of the action alleging that defendants University of Missouri-Columbia, University of Missouri-Columbia School of Medicine, University of Missouri-Columbia School of Medicine Department of Radiology, Missouri Radiology Imaging Center (collectively "University Defendants"), Dr. Kenneth L. Rall, and Dr. Michael Richards fraudulently claimed reimbursement for radiology services provided by attending or teaching physicians when those services were actually provided by residents, and that certain attending or teaching physicians counter-signed the residents' interpretation of images without looking at the associated images in violation of federal health care rules and regulations. The government declined to intervene on all other claims (such as the upcoding of certain bills, as well as accepting Medicare funds for residents while failing

to provide them with requisite training and billing for services provided by physicians with temporary licenses without proper supervision), as well as any claims against defendants Garg, Juengermann, Ahsan, Fallahian, and Kumar.  Within the motion to intervene in part, the government noted that the relator planned to object to certain terms of the settlement, and wanted a hearing pursuant to 31 U.S.C. § 3730(c)(2)(B) (which provides the government may settle over relator's objections if the court determines, after a hearing, that "the proposed settlement is fair, adequate, and reasonable under all circumstances.").  On October 26, 2015, the Court entered an order granting the government's motion to intervene in part and lifting the seal in part.

Effective June 30, 2016, the government and the University executed a settlement agreement to settle the Over-reads Allegations for $2.2 million.  The University has already paid the settlement amount to the government.  The settlement agreement provides that upon receipt of the settlement amount, the government will file a notice of dismissal regarding the University (which the government has done, <u>see</u> Doc. No. 48).  The agreement also provides that if relator successfully challenges the settlement on the basis that he is entitled to proceeds, and an appellate court upholds that decision, the government will return the settlement amount to the University.  In addition to the $2.2 million settlement, the University self-disclosed certain claims to the government that were not alleged in the qui tam complaint, and the University has paid the United States $3,051,188.00 to settle the self-disclosed matters.  The government argues that relator is not entitled to a share of the proceeds of the settlement. On August 4, 2016, the government filed a notice of dismissal under Rule 41(a)(1)(A) as to the University, noting that United States and the University had settled their claims, and

arguing that relator Galuten has no claim against the University which would merit a hearing under 31 U.S.C. § 3730(c)(2)(B). See Notice of Dismissal, Doc. No. 48. Relator opposes the notice of dismissal, arguing that he is entitled to a share of proceeds and a fairness hearing. See opposition, Doc. No. 56.

On December 8, 2015, the United States filed its motion to approve the settlements with defendants Rall and Richards. Doc. No. 33. On December 28, 2015, relator filed a response to the United States' Motion. Doc. No. 36. Subsequently, the Court ordered the United States to submit certain documents for in camera review. Doc. No. 39. After reviewing the documents provided in response to the Court's Order, the Court found it still needed more information regarding the time period immediately before and after Rall and Richards knew about the investigation of this qui tam complaint. Specifically, the Court Ordered Rall and Richards to provide six months of bank statements and other financial records, dated April 1, 2012 through October 1, 2012, for in camera review. See Order, Doc. No. 41.

On August 8, 2016, the government filed a motion to amend the settlements against defendants Rall and Richards. Given the motion to amend, the Court entered an order on September 29, 2016 (Doc. No. 63), denying the previous motion to approve the settlements as moot, indicating that it would determine in consideration of the amended motion to approve the Rall and Richards settlements whether to schedule a hearing or whether to allow relator additional discovery into Rall and Richards' financial condition.

Defendant Rall was the chair of the Department of Radiology from approximately 2006 through June 2012. Defendant Richards was Chief of the Mammography Division

in the Department of Radiology, and worked for the University from 2003 until June 2012. The government indicates that early on, it shared the qui tam complaint with the University Defendants, who then retained counsel and conducted an internal investigation determining that the allegations had merit with respect to Rall and Richards, who they found violated Medicare rules by falsely certifying that they had viewed images associated with residents' interpretations. The University ascertained that the no-reads rate for Rall as 35.88% and the no-reads rate for Richards as 29.30%. The United States' single damages for the time period between May 2005 to November 2011 were estimated to be $2,223,485.56 ($1,512,199.73 attributable to Rall, $711,285.72 attributable to Richards). The government is also anticipating criminal charges against defendants Rall and Richards, and any proposed plea agreement would require that they surrender their medical licenses (and a health care fraud conviction will lead to mandatory exclusion as a Medicare/Medicaid provider). The government characterizes the settlements against Rall and Richards as "ability to pay" settlements, based on consideration of defendants' financial circumstances. The government has moved to amend the settlements (Doc. No. 49), to reflect the following: (a) To eliminate two federal programs (Veterans Affairs and federal workers' compensation), which were allocated only a fraction of the damages allocated to the other federal programs, in order to streamline the federal approval process, and to add the federal Defense Health Agency (TRICARE), such that these two settlements are consistent with the government's recent settlement with the Curators of the University of Missouri. This change does not impact the settlement amounts to be paid by Rall and Richards; (b) To refer to the "University defendants" as the "University" to be consistent

with the government's recent settlement with the Curators of the University of Missouri; (c) To change the timing of the proposed payments over time by Richards because a number of months have passed since the government's initial Motion was filed; (d) To change Rall's settlement such that he will pay over time, rather than in a lump sum, and to add standard payment-over-time provisions; and (e) To add provisions to Richards' agreement providing that the Office of Inspector General of the Department of Health and Human Services may exclude him from all Federal health care programs if he fails to timely cure a default.

    Under the proposed settlements, Rall will pay $1.5 million over time, and Richards will pay $375,000 over time. Notably, the government states that it considered in its analysis of Rall that he is eighty years old and reported to have serious health problems, and disposition of assets and loss of income would significantly affect his innocent wife. With respect to Richards, the government took into account that he has not been employed since he left the university and has been supplementing his income by cashing out retirement assets each month.

    Relator (who is entitled to a portion of the settlement, of "at least 15 percent but not more than 25 percent of the proceeds of the action or the settlement of the claim, depending upon the extent to which the person substantially contributed to the prosecution of the action," 31 U.S.C. § 3730(d)(1)), objects to the various settlements. With respect to the University defendants, relator argues that he is entitled to a share of the settlement, contrary to the arguments of the government. With respect to the settlements against Rall and Richards, relator argues that he is entitled to additional

financial information from defendants regarding their ability to pay, and that he is entitled to more than the 15% recommended by the government.

## II.     Motions Related to University Settlement (Doc. Nos. 44, 48, 53, and 54)

All four of these motions involve the same basic issue:  Is the relator entitled to a share of the proceeds of the settlement between the United States and the University?

In Relator's Motion to Retain Partial Jurisdiction of Settled Claims (Doc. No. 44), the relator filed an early motion so as to put the Court on notice that the settlement and proposed dismissal of the claims between the United States and the University was imminent, and the relator wanted to assure that the Court retained jurisdiction over the issues regarding the settlement and relator's share of the award (if any).  Thereafter, on August 4, 2016, the United States filed its Notice of Dismissal Regarding the University (Doc. No. 48), seeking dismissal of all claims against the University due to the settlement, and arguing that relator was not entitled to any portion of the settlement.  Relator filed opposition to the notice of dismissal (Doc. No. 56).  Relator also filed two more motions:  a motion for a relator's share of the settlement proceeds (Doc. No. 53) and a motion for a fairness hearing regarding the settlement between the University and the United States (Doc. No. 54), seeking discovery and other information regarding the self-disclosed portion of the University's settlement to see if it overlapped the claims in the qui tam complaint in any way.  In the motion for a relator's share of the settlement proceeds, relator argues that the University never filed a response to the Complaint raising its defenses such as sovereign immunity or that it was not a person who could be sued by an individual under the false claims act; however, as noted by the United

7

States, the University was not required to file an answer to the Complaint because it had never been formally served with process.

In relator's initial motion regarding the settlement with the University (Doc. No. 44), relator claims he had seen a signed settlement agreement between the government and the University through press releases, but had not yet seen the settlement agreement himself. According to relator, the settlement would appear to settle all matters in this case relating to the University of Missouri. Furthermore, relator indicates that upon receipt of payment, the government would file a motion to dismiss all claims against the University of Missouri, without provision to seek Court approval of the settlement. Additionally, the signed settlement agreement would provide that the government intends to bar the relator from receiving any share of the payment made by the University. Relator indicates that he wants to have the opportunity to litigate the issues regarding his share (if any) of the settlement, and requests that the Court retain sufficient jurisdiction over the claims related to the University to that Relator may bring a motion under 31 U.S.C. § 3730.

In response, the United States filed suggestions in opposition to the motion to retain partial jurisdiction (Doc. No. 47), indicating that the relator lacks standing to challenge the settlements with the University. In particular, the government argues that the University is an arm of the state, and therefore relator is barred by both the FCA and case law from sharing in that recovery. The government also argues that the matters settled in the self-disclosures settlement have no overlap with the allegations in relator's qui tam complaint, and his recovery is "limited to a share of the settlement of the claim

[he brought]." Rille v. PricewaterhouseCoopers, LLP, 803 F.3d 368, 372 (8th Cir. 2015).[2]

The government notes that the Supreme Court has held that a private individual may not "bring suit in federal court on behalf of the United States against a State (or state agency) under the False Claims Act." Vermont Agency of Natural Resources v. United States ex rel. Stevens, 529 U.S. 765, 768, 787-88 (2000) (noting the "longstanding [statutory] interpretive presumption that 'person' does not include the sovereign," and finding that individuals cannot proceed against states under the FCA, but not reaching the question as to whether the United States can file suits against states under the FCA). See also Donald v. University of California Board of Regents, 329 F.3d 1040 (9th Cir. 2003) (finding that the University of California was an arm of the state and therefore the relator could not bring suit against it). Furthermore, where a relator is barred from proceeding under the FCA, the relator is barred from sharing settlement proceeds obtained by the United States. See, e.g., United States ex rel. Newell v. City of St. Paul, 728 F.3d 791, 799-800 (8th Cir. 2013).

The next question is whether the University of Missouri-Columbia is an arm of the state. To answer that question, the Court looks to the analysis of Eleventh Amendment immunity. The government notes that numerous Eighth Circuit decisions hold that the University is entitled to Eleventh Amendment immunity. See Cron v. Board of Governors

---

[2] Relator does not dispute that he is not entitled to portions of the settlement that do not overlap the qui tam complaint; however, in his motion for a settlement hearing, he seeks specific information about the claims that were settled so that he can make an independent determination as to whether there is overlap. As will be seen through this Court's analysis, given that the University is not a person subject to suit by the individual relator under Supreme Court precedent, it makes no difference as to the outcome whether there is an overlap between the additional $3 million settlement between the University and the United States or not.

of Missouri State Univ., No. 07-3423, 2008 U.S. App. LEXIS 11472, *2 (8th Cir., May 29, 2008) (unpublished opinion); Ormerod v. Curators of the University of Missouri, 97 Fed. Appx. 71, 72 (8th Cir. 2004); Scherer v. Curators of the University of Missouri, 49 Fed. Appx. 658, 658-59 (8th Cir. 2002). See also Ajiwoju v. University of Missouri-Kansas City, 2007 U.S. Dist. LEXIS 28940, *4-5 (W.D.Mo. April 19, 2007)(J. Gaitan) (finding, "It is clear that the University of Missouri is a state instrumentality and is entitled to Eleventh Amendment immunity"; further explaining, "In Sherman v. Curators of University of Missouri, 871 F. Supp. 344, 348 (W.D.Mo. 1994), the Court held that the University of Missouri was entitled to Eleventh Amendment immunity. Similarly, in Long v. Curators of University of Missouri, [1993 U.S. Dist. LEXIS 2475, *1 (W.D. Mo. 1993)], the Court stated: '[t]he law is clear and the plaintiff does not dispute that the Curators of the University of Missouri are representatives of the State entitled to immunity under the Eleventh Amendment unless it has been waived.'"). The United States, therefore, argues that because the University of Missouri is treated as an arm of the state for Eleventh Amendment purposes, it cannot be found to be a "person" subject to suit by an individual under the FCA.

Relator replies (Doc. No. 55) that he has responded to the substantive issues raised by the United States through his motion for relator's share of proceeds (Doc. No. 53). In his motion for a relator's share of proceeds (Doc. No. 55), relator argues that the University itself has not raised the defense that it is an arm of the state; instead, the issue was raised only by the United States. Relator indicates that this makes Vermont Agency inapplicable, as in Vermont Agency the United States declined to intervene. Furthermore, relator argues that the plaintiff-relator in Vermont Agency conceded that

the defendant was an arm of the state, and did not present defenses on that issue before the Supreme Court. Here, relator argues that he does not concede that the University is an arm of the state, and the University has not appeared to defend this issue. Relator then argues that because the University elected to settle rather than appear and raise their affirmative defenses, the United States cannot raise this issue now as the United States lacks standing to raise this issue on behalf of the University. Given that the University did not raise this argument itself (because it settled prior to being formally served the Complaint), relator argues that we can only speculate as to what might have happened if the United States declined to intervene, Galuten chose to litigate his claims against the University, and the University chose to raise the "person"/sovereign immunity defenses.

Additionally, relator argues that the rationale for sovereign immunity (i.e., avoiding payments related to types of suits the state has not consented to) is not implicated in this matter, where the University has agreed to settle the matter pled in the qui tam complaint for $2.2 million, which now belongs to the United States. Relator argues that he is simply seeking the portion of that recovery that he is entitled to under 31 U.S.C. § 3130(d)(1). Relator argues, therefore, that based on the express terms of the FCA, he is entitled to 15 – 25 percent of the $2.2 million settlement amount.

Responding to the issues raised in relator's motion for a portion of the settlement amount, the government notes that relator has not cited any authority directly on point that supports a relator's award under the FCA under the circumstances of this case. In particular, the United States argues: (1) the University was not required to file an answer or otherwise respond to the complaint, because the complaint was never

formally served upon it; (2) the Court may take judicial notice of the facts and law regarding sovereign immunity and/or "person" immunity under the FCA; and (3) Donald v. University of California Board of Regents, 329 F.3d 1040 (9th Cir. 2003), is a case exactly on point, where the Ninth Circuit found that, where (as here) the relator attempted to distinguish Vermont Agency because the government had intervened in part in Donald, Vermont Agency nevertheless acted to preclude relator's claim for a portion of the settlement against the defendant University, a state actor.  See Id. at 1044 (finding it was "persuaded that the Court's holding in [Vermont Agency] -- that a private party may not bring a qui tam action against a state entity under § 3729(a) of the FCA -- forecloses the relators' § 3730(d)(1) claim to a share of the proceeds from the government's settlement with the Regents").

In his reply suggestions (Doc. No. 62), relator argues that this Court should use statutory interpretation principles to arrive at the conclusion that he should be allowed to recover a relator's claim as to the settlement against the University.  The difficulty with relator's argument is that it is contrary to well-settled case law cited by the United States.  The Court finds, instead, that Donald v. University of California Board of Regents, 329 F.3d 1040 (9th Cir. 2003), is exactly on point with the case at hand, and the Court further believes that the law as explained in Donald is consistent with Supreme Court precedent.  Although relator asks this Court to ignore the status of the University as an arm of the state because the University did not answer (because it was not required to do so), the Court takes judicial notice of the numerous opinions finding that University to be an arm of the state.  Given its status, relator could not proceed on

his claim against the University, and therefore relator is not entitled to a portion of the settlement funds.

Therefore, for the foregoing reasons, the Court finds that 1) Relator's Motion to Retain Partial Jurisdiction of Settled Claims (Doc. No. 44) is **DENIED**; (2) The United States' Notice of Dismissal Regarding the University (Doc. No. 48) is **GRANTED**; (3) Relator/Plaintiff's Motion for a Relator's Share of Settlement Proceeds (Doc. No. 53) is **DENIED**; and (4) Relator/Plaintiff's Motion for a Fairness Hearing [regarding University Claims] Pursuant to 31 U.S.C. § 3730(C)(2)(B) (Doc. No. 54) is **DENIED**.

### III.     Rall and Richards Settlements (Doc. No. 49)

The United States in its amended motion (Doc. No. 49) requests pursuant to 31 U.S.C. § 3730(c)(2)(B), that the Court schedule a hearing and approve its amended proposed settlements with Kenneth Rall and Michael Richards.

In response, relator notes that the amended proposed settlements propose changes that would directly affect relator's receipt of his share of settlement proceeds, such as allowing defendant Rall to pay over a period of years as opposed to paying a lump sum. Relator argues that he has limited information about Rall's finances, but from Rall's disclosures as of 2013, it appears to relator that defendant could pay the settlement proceeds in full from his net assets. Relator requests that, after the Court completes its review of the financial records submitted by Rall and Richards, as well as the financial analysis conducted by the government, that relator be given the opportunity to file supplemental suggestions in opposition to the present motion.

In reply, the government notes that the relator is entitled to a fairness hearing under the False Claims Act with respect to the proposed settlements with Kenneth Rall and Michael Richards. 31 U.S.C. § 3730(c)(2)(B). The United States believes that relator's objections to the proposed amendments to the settlements, as well as his earlier objections to the Rall and Richards settlement, can be addressed in the context of that hearing when it is scheduled. The government further opposes relator's request for another round of briefing once the Court has completed its review of the financial records, as the government believes that will lead to additional delay. Instead, the government requests that the Court address all of relator's objections to the proposed settlements in one hearing without additional briefing.

The Court, after reviewing the proposed settlement agreements and the information submitted for in camera review by the government and by defendants Rall and Richards, agrees with the United States that relator's concerns can be addressed through a settlement fairness hearing, without any further briefing on the matter. In particular, the Court finds that, after review of the records submitted by the United States and the defendants, defendants' records from May to October 2012 do not reflect substantial transfers of assets which would have the indicia of defendants hiding assets from the United States or relator. Furthermore, the review of defendants' records from 2012 does not make the Court question the "ability to pay" analysis made by the United States based on bank records from 2013 (as well as tax returns from both before and after the complaint in this matter was made public to Rall and Richards). The Court notes that courts in other jurisdictions have found that relators are not entitled discovery prior to a settlement approval hearing as a matter of right. See U.S. ex rel. Schweizer v.

Oce N. Am., 956 F. Supp. 2d 1, 11 (D.D.C. 2013). Accordingly, given the Court's review of the documents before it as well as relator's lack of entitlement to discovery as a matter of right, the Court believes the next proper step is to schedule a settlement fairness hearing, where relator may present his objections.

**IV.    Conclusion**

Therefore, for the foregoing reasons: (1) Relator's Motion to Retain Partial Jurisdiction of Settled Claims (Doc. No. 44) is **DENIED**; (2) The United States' Notice of Dismissal Regarding the University (Doc. No. 48) is **GRANTED**; (3) The United States' Amended Motion to Approve Proposed Settlements with Rall and Richards as Fair, Adequate, and Reasonable (Doc. No. 49) is **GRANTED** with respect to the request for a hearing; (4) Relator/Plaintiff's Motion for a Relator's Share of Settlement Proceeds (Doc. No. 53) is **DENIED**; and (5) Relator/Plaintiff's Motion for a Fairness Hearing Pursuant to 31 U.S.C. § 3730(C)(2)(B) (Doc. No. 54) is **DENIED**.

With respect to the dismissal regarding the University (Doc. No. 48), it is further ordered that:

a.    The United States' claims against The Curators of the University of Missouri, on behalf of its University of Missouri-Columbia, University of Missouri-Columbia School of Medicine, University of Missouri-Columbia School of Medicine Department of Radiology, and Missouri Radiology Imaging Center (collectively "the University") that were released in the parties' Settlement Agreement effective June 30, 2016 (the "Covered Conduct") are dismissed with prejudice; and

b.    The United States' claims against the University that were not released in the Settlement Agreement are dismissed without prejudice.

The Court has scheduled a settlement approval hearing with respect to the proposed settlements with defendants Rall and Richards for **Wednesday, May 10, 2017**, at **10:00 a.m.** at the Charles Evans Whittaker Courthouse, Courtroom 7C, 400 E. 9th Street, Kansas City, Missouri.

**IT IS SO ORDERED**.

Date:   March 29, 2017              **S/ FERNANDO J. GAITAN**, **JR.**
Kansas City, Missouri               Fernando J. Gaitan, Jr.
                                    United States District Judge